and offer the requisite bond and security, was applicable only to corporations then in existence, and could give no authority, nor impose any duty upon a corporation subsequently erected; and therefore that the new corporation had no authority, and was not bound to require the bond and security. That the by-law of the 5th of February, 1800, although not expressly repealed, was virtually of no effect, because the authority, upon which it was founded, had ceased to exist, and could create no obligation upon the "common council" to require bond and security. In this view of the case I am inclined to concur. They cannot be bound by their own by-law unless they had authority to pass such a by-law; nor can the by-law of the old corporation bind the new, when the authority upon which that by-law rested is taken away. I am therefore of opinion that the judgment upon the demurrer should be for the defendants, upon all the counts.

It may be observed, also, that the first count does not state that the said P. G. M. ever received any money for the plaintiff; nor that the plaintiff ever demanded any from him; nor does it expressly aver that the loss happened in consequence of the negligence of the defendants; nor that the plaintiff believed that security had been given. The second count does not refer to the by-laws, or to the Virginia act of 1796; nor does the plaintiff aver it to be the duty of the common council to require the bond and security; nor that P. G. M. received the money for the sales, but says that he became indebted to the plaintiff "by means of said sales." There is nothing in this count which shows the obligation of the defendants, or the title of the plaintiff. The third count does not state that the defendants granted any license, but knowingly permitted and suffered the said P. G. M. to carry on the business of auctioneer, and took no bond and security; but received the annual rent of 500 dollars. It does not state that the said P. G. M. received any money for the goods sold. This count I think is clearly bad.

Judgment for the defendants upon the demurrer.

## Case No. 4,994.

**FOWLE et al. v. BOWIE.**

[3 Cranch, C. C. 291.] [1]

Circuit Court. District of Columbia. May Term. 1828.

Mr. Key, for defendant,

But THE COURT (nem. con.) was of opinion that the rule-day being before the expiration of the term, made no difference: and that the plaintiffs were entitled to judgment by default.

## Case No. 4,995.

**FOWLE v. BOWIE.**

[3 Cranch, C. C. 362.] [1]

Circuit Court. District of Columbia. Dec. Term, 1828.

Mr. Jones, for plaintiff,

Mr. Key, for defendant,

But THE COURT (nem. con.) continued the cause, it not being after the fourth term after the appearance court. See Laws Md.

1721, c. 14, § 1; Id. 1730, c. 16; Id. 1787, c. 9, § 2; Id. 1794, c. 6, § 2.

## Case No. 4,996.

### FOWLE v. SPEAR.

[11 Law Rep. 130; 7 Pa. Law J. 176; 4 Pa. Law J. Rep. 145; Cox, Am. Trade-Mark Cas. 67; Cox, Manual Trade-Mark Cas. 48.] [1]

Circuit Court, E. D. Pennsylvania. Nov. 7, 1847.

Mr. Ingraham, for complainant,

KANE, District Judge. Is there any case in which a court of equity has interfered to protect a quack medicine?

Mr. Ingraham. The bill alleges that this is "a valuable medicine," and that is uncontradicted; besides, it is not very easy to understand what it meant by a "quack medicine," and what is meant by a "quack" is still harder to define.

KANE, District Judge. In a late trial for libel in this city, it seemed to be the result of the understanding of the most eminent of the faculty who were examined, that a "quack" meant a practitioner who prescribed or recommended a secret medicine.

Mr. Ingraham. That is very intelligible certainly, and of easy application, for unless I am greatly mistaken, the names of

---

[1] [Cox. Manual Trade-Mark Cas. 48, contains only a partial report.]